UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **MICHAEL W. DICKINSON, INC.,** | **CIVIL ACTION NO. 5:15-326-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **KEENELAND ASSOCIATION, INC.,** | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on defendant Keeneland Association, Inc.'s motion to dismiss plaintiff Michael W. Dickinson, Inc.'s complaint. (DE 11). For the following reasons, Keeneland's motion is **DENIED**.

## I.  Background

This case is an attempt by Dickinson[1] to collect on the judgment it obtained in an earlier action against Martin Collins Surfaces & Footings, LLC. *See Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 5:11–cv–281–JMH, 2012 WL 5868903, at *1 (E.D. Ky. Nov. 20, 2012).

Dickinson, a Maryland corporation, holds a patent entitled "Sport and Recreational Surface," which is intended for use in the design of synthetic equestrian surfaces. (DE 1, Compl. ¶ 2). Martin Collins was a Kentucky limited liability company, wholly owned by Martin Collins International, Ltd., and Keeneland Ventures PT, LLC, by and through Keeneland. (DE 1, Compl. ¶ 2–4). Keeneland, the defendant in this action, operates a

---

[1] To avoid a cluttered use of acronyms for each entity's name, the Court will use abbreviated names for all entities.

thoroughbred horse racing business and owns a sales complex and racing facility in Lexington, Kentucky. (DE 1, Compl. ¶ 3).

The previous action between Dickinson and Martin Collins arose out of a non-exclusive patent license agreement between the parties, which settled a dispute regarding the terms by which Martin Collins and its customers, including Keeneland, could use Dickinson's patented product. (DE 1, Compl. ¶ 8–15). Dickinson filed suit against Martin Collins for breach of that agreement. (DE 1, Compl. ¶ 11).

Shortly after Dickinson filed the previous action, Martin Collins dissolved. Upon the dissolution of Martin Collins, Central Bank & Trust Company acquired a first-priority lien on all of the dissolved company's assets based on a loan Central Bank had made to Martin Collins. (DE 1, Compl. ¶ 12–13, 27, 32).  That loan was guaranteed by Keeneland. (DE 1, Compl. ¶ 27).

As a result of the earlier action, Dickinson obtained a judgment against Martin Collins for breach of contract in the amount of $395,874.18, plus interest. (*See* DE 1, Compl. ¶ 1). Because Dickinson could not collect from Martin Collins, it sought post-judgment discovery from several third parties, including Keeneland Ventures and Keeneland. *See Dickinson*, 2012 WL 5868903, at *1.

In denying Dickinson's request for discovery from third parties, U.S. District Judge Joseph M. Hood stated that Dickinson was attempting "to engage in a fishing expedition under the guise of post-judgment discovery to determine if a basis exist[ed] to pierce the corporate veil, even though no facts currently suggest[ed] that piercing [was] appropriate." *Dickinson,* 2012 WL 5868903, at *4.

This case is Dickinson's attempt to do what it could not do before—collect on its judgment. Through its current complaint, Dickinson seeks to pierce Martin Collins' corporate veil, claiming Martin Collins is the alter-ego and sham corporation of Keeneland. (DE 1, Compl.

2

¶ 1). In support of its claim, Dickinson offers the declaration of Anthony Paul James, a former employee of Martin Collins International.

Keeneland responded to Dickinson's complaint with a motion to dismiss, arguing: first, that Dickinson failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and second, that Dickinson failed to join required parties under Rule 12(b)(7).

## II. Analysis

### a.   Failure to state a claim under Rule 12(b)(6)

In this new action, Dickinson attempts to collect on its judgment from Keeneland by asserting that Martin Collins is the sham corporation and alter ego of Keeneland. Keeneland argues that Dickinson has failed to state a claim upon which relief can be granted.

Keeneland's argument is governed by Rule 12(b)(6). That rule provides courts with a mechanism to enforce Rule 8, which governs the sufficiency of a complaint. In determining whether a plaintiff's complaint can withstand a motion to dismiss, the Court will assume the veracity of well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Dickinson has filed its complaint along with the declaration of James,[2] a former employee of Martin Collins International, one of Martin Collins' parent entities. The Court can consider James' declaration without converting Keeneland's motion to dismiss into one for summary judgment. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred

---

[2] James agreed to speak with Dickinson after a nondisclosure agreement he had with Martin Collins International expired. (DE 1, Compl. ¶ 20).

to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment.").

Dickinson argues that its complaint and James' declaration present sufficient evidence to state a plausible claim to pierce Martin Collins' corporate veil to reach Keeneland. In its reply to its motion to dismiss, Keeneland aptly described the issue for the Court to resolve:

> Plaintiff's current effort to pierce [Martin Collins'] corporate veil, therefore, rises or falls with whether the Declaration provided by James provides new factual evidence or allegations that would raise Plaintiff's right to relief against Keeneland above the speculative level.

(DE 15, Reply at 4).

The Court recognizes that piercing the corporate veil is an equitable doctrine that may be invoked to allow a creditor recourse against the shareholders of a corporation. *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 155 (Ky. 2012). "In short, the limited liability which is the hallmark of a corporation is disregarded and the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence." *Id.* Courts will treat "limited liability companies the same as corporations for purposes of liability analysis." *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 788 (W.D. Ky. 2013).

Under Kentucky law,[3] the test for whether a Court should pierce an entity's corporate veil is two-fold, and "[t]he burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." *Id.* at 783 (citing *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007)).

First, the Court must find "domination of the corporation resulting in a loss of corporate separateness." *Inter-Tel*, 360 S.W.3d at 165. Second, the Court must find "circumstances

---

[3] The parties do not dispute the application of Kentucky law to this case.

under which continued recognition of the corporation would sanction fraud or promote injustice." *Id*. The test is conjunctive, and both prongs must be met. *See id*.

At the pleading stage, the plaintiff must put forth sufficient facts to state a plausible claim on both elements. *See Arapahoe Res., LLC v. Prof'l Land Res., LLC*, No. 15-10-ART, 2015 WL 4887321, at *3, *5 (E.D. Ky. Aug. 17, 2015).

### 1. Domination of the corporation resulting in a loss of corporate separateness

Under the first prong of the veil-piercing analysis, the Court considers a host of equitable factors in determining whether domination of the corporation has resulted in a loss of corporate separateness. These factors include:

(1) Inadequate capitalization;
(2) Failure to issue stock;
(3) Failure to observe corporate formalities;
(4) Nonpayment of dividends;
(5) Insolvency of the debtor corporation;
(6) Nonfunctioning of the other officers or directors;
(7) Absence of corporate records;
(8) Commingling of funds;
(9) Diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors;
(10) Failure to maintain arm's-length relationships among related entities; and
(11) Whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Inter-Tel*, 360 S.W.3d at 163.

The Supreme Court of Kentucky has stated that the following three factors are "the most critical": (1) grossly inadequate capitalization; (2) egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary; and (3) a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature. *Id*. at 164.

Similarly, the following questions are helpful for determining whether a plaintiff has pled sufficient facts on the first element of a veil-piercing claim:

(1) Does the parent own all or most of the stock of the subsidiary?

5

(2)  Do the parent and subsidiary corporations have common directors or officers?

(3)  Does the parent corporation finance the subsidiary?

(4)  Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?

(5)  Does the subsidiary have grossly inadequate capital?

(6)  Does the parent pay the salaries and other expenses or losses of the subsidiary?

(7)  Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?

(8)  Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?

(9)  Does the parent use the property of the subsidiary as its own?

(10)  Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?

(11)  Are the formal legal requirements of the subsidiary not observed?

*Id.*

Courts have found that plaintiffs who plead facts in support of a majority of the factors state a plausible claim on the first element of the veil-piercing test. *See, e.g.*, *Arapahoe*, 2015 WL 4887321, at *5 (citing *Pro Tanks*, 988 F. Supp. 2d at 792) (*Arapahoe* discusses *Pro Tanks* as finding that the first element was met when "two of the three critical factors" and "a majority of all of the factors [were] in favor of this finding").

The facts Dickinson alleges, which the Court must accept as true, include:

(1)  that Martin Collins International, one of Martin Collins' parent entities, did not have a true ownership presence in Martin Collins, and that, although in theory, Martin Collins International had a fifty-percent interest in Martin Collins, in practice, Keeneland's management controlled Martin Collins, so much so that Keeneland used its own employees to handle all aspects of Martin Collins' business;

(2)  that Martin Collins failed to observe corporate formalities, such as holding regular meetings of directors or members;

6

(3) that James requested minutes of directors or members meetings and was not provided with any, nor could he find them on his own;

(4) that to avoid having its name associated with ongoing litigation while it lobbied Ohio regulators to approve plans for a casino that would be beneficial to it, Keeneland had Martin Collins enter into the agreement with Dickinson;

(5) that Keeneland helped Martin Collins pay off all creditors except Dickinson; and

(6) that Keeneland acted as a guarantee on critical financing for Martin Collins, including the loan that was used "to subjugate Plaintiff's interest to the interests of Central Bank, notwithstanding Defendant's efforts to pay off all other creditors."

(DE 1, Compl. ¶ 22–33; DE 1-1, James Declaration).

These facts support two of three "most critical factors"—egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature.

Further, the facts as pled reach many of the equitable factors in the expanded lists, including: failure to observe corporate formalities; absence of corporate records; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; failure to maintain arm's-length relationships among related entities; and whether the corporation is a mere facade for the operation of the dominant stockholders. Another factor implicated by Dickinson's allegations is the financing by the parent corporation of the subsidiary.

Through its complaint and James' declaration, Dickinson has pled sufficient facts to state a plausible claim on the first element of the veil-piercing test. The Court will now address the second element of the analysis.

7

### 2. Continued recognition of the corporation would sanction fraud or promote injustice

The second element of the veil-piercing test requires the Court to find that a continued recognition of the corporation would sanction fraud *or* promote an injustice. *See Inter-Tel*, 360 S.W.3d at 165. As to this element, "the trial court should state specifically the fraud or injustice that would be sanctioned if the court declined to pierce the corporate veil." *Id*.

A showing by a plaintiff of "morally culpable conduct short of actual fraud" will satisfy the test, but an injustice "must be some wrong beyond the creditor's mere inability to collect from the corporate debtor." *Id*. at 164. This injustice can include unjust enrichment, a parent escaping liabilities on behalf of a subsidiary that the parent caused, or an intentional scheme to place assets out of the reach of creditors. *Id*.

Here, Dickinson has shown a plausible claim of the "*something more*" required by case law, specifically unjust enrichment by Keeneland. For instance, Dickinson alleges that "[a]fter bilking Plaintiff, another player in the thoroughbred industry, for access to its cutting edge technology, Defendant shut down [Martin Collins] and escaped from the consequences of a federal judgment." (DE 1, Compl. ¶ 26).

Thus, Dickinson has articulated sufficient facts to support both elements of its veil-piercing claim. Now, the Court will consider Keeneland's argument under Rule 12(b)(7) that Dickinson has failed to join required parties to this litigation.

### b. Failure to join parties under Rule 12(b)(7)

The second means by which Keeneland seeks to have Dickinson's complaint dismissed is by arguing that Dickinson has failed to join parties under Rule 12(b)(7). That rule permits parties to move to dismiss a case if another party "fail[ed] to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).

The Court uses a three-step process in assessing whether joinder is proper under Rule 19. *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004). First, the Court must determine whether the person or entity to be joined is a required party under Rule 19(a). *Id.* If so, the Court must then decide whether joinder of that party would deprive the court of subject-matter jurisdiction. *Id.* Lastly, if joinder is not feasible because it would deprive the Court of jurisdiction, the Court will use the factors in Rule 19(b) to determine whether it should "in equity and good conscience" dismiss the case because the party that cannot be joined is indispensable. *Id.*

Rule 19(a) specifies who are persons or entities to be joined if feasible:

> **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Here, Keeneland argues that Dickinson has failed to join several parties that would be required to the litigation, including Martin Collins, Martin Collins International, and Keeneland Ventures. (DE 11-1, Mem. at 11). Upon review, the Court finds that these parties are not required to be joined.

First, although Martin Collins International and Keeneland Ventures were the parent entities of Martin Collins, Keeneland was the sole member of Keeneland Ventures and Dickinson alleges that Martin Collins International had no true ownership interest in Martin Collins. Upon these facts, the Court sees no added benefit of requiring sequential veil

9

piercing. *See generally Inter-Tel*, 360 S.W.3d at 166 ("Where such entities have acted in concert without regard to their own corporate separateness to achieve the unjust results that veil piercing protects against, any insistence on sequential piercing necessarily falls on deaf ears.").

Further, the Court sees no need to join Martin Collins as a party in this matter. Indeed, the manner in which a court approaches a joinder argument under Rule 19 should not elevate form over substance. The opinions of other jurisdictions are helpful in this respect. For instance, the Fifth Circuit has found that, in situations where a subsidiary was a primary participant in events giving rise to a lawsuit against a parent entity, failure to join the subsidiary would be improper. *See Dernick v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. Unit A March 1981).

However, Martin Collins is not alleged to have caused harm in this case—Keeneland is. Thus, Martin Collins does not need to be joined. *See Inter-Tel*, 360 S.W.3d at 168 ("[T]here is nothing inappropriate about proceeding first to secure a judgment as to the actual debtor and, upon determining that the debtor has no assets and its corporate shield may be vulnerable, then bringing a piercing suit against those who actually control the corporation and have rendered it judgment-proof.").

Having found that the other parties are not required and need not be joined, the Court does not reach the final two prongs of the three-step test under Rule 19. However, it does not appear that any of the parties Keeneland argues should be joined would destroy the Court's diversity jurisdiction.

In sum, Keeneland's argument to dismiss Dickinson's complaint for failure to join parties under Rule 12(b)(7) also fails.

### III. Conclusion

Dickinson has pled sufficient facts to state a plausible claim on both elements of its veil-piercing theory. Similarly, Dickinson did not fail to join required parties to this litigation under Rule 19. Thus, Keeneland's motion to dismiss for failure to state a claim under Rule 12(b)(6) and for failure to join parties under Rule 12(b)(7) will be denied.

Accordingly, it is hereby **ORDERED** that Keeneland's motion to dismiss (DE 11) is **DENIED**.

Dated March 28, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY